# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DONNA MUDGETT,

    Plaintiff,

v.

CENTEGRA HEALTH SYSTEM, INC.,

    Defendant

Case No. 04-C-6212

Hon. Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna Mudgett ("Mudgett") filed a five count Amended Complaint against defendant Centegra Health System, Inc. ("Centegra"), alleging claims of discrimination, retaliation, and failure to accommodate in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, and a violation of the Family Medical Leave Act of 1993 ("FMLA"), as amended 29 U.S.C. §§ 2601 *et seq.* Centegra has moved under Rule 12(b)(6), Fed. R. Civ. P., to dismiss Mudgett's ADA claims for failure to exhaust administrative remedies. For the reasons set forth below, the court denies Centegra's motion.

## I. MOTION TO DISMISS STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In viewing all facts in the light most favorable to the non-moving party, the court may grant the motion only if it is beyond doubt that the non-movant can plead no set of facts that would support his claim for relief. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989); *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957). In ruling on the motion, the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## II.    ALLEGATIONS OF THE AMENDED COMPLAINT

Mudgett was employed by Centegra from April 1997 until March 2004. She worked as a registered nurse in obstetrics until June of 2003. In the Spring of 2003, Mudgett was diagnosed with methicillin resistant staphylococcus aureus ("MRSA"). After being treated successfully for MRSA, Mudgett was released to return to work with no restrictions.

In June of 2003, an infant delivered at Centegra was diagnosed with an MRSA infection. As a result of her earlier diagnosis of and treatment for MRSA, Centegra removed Mudgett from her duties as an obstetrics nurse and informed her that she was not to return to work until she submitted to medical and DNA testing. No other member of the obstetrics staff was required to submit to any type of medical testing at that time.

On July 15, 2003, Centegra notified Mudgett that she had tested positive for MRSA. Three days later, Mudgett was suspended without pay. On July 24, 2003, Mudgett asked that she be retested for MRSA. The retest proved negative. Centegra tested Mudgett at least an additional seven times; each of those tests returned a negative result for MRSA.

On August 25, 2003, Centegra informed Mudgett that she was prohibited from returning to obstetrics because of her positive MRSA test. Until she submitted to a series of drugs and treatments, Centegra refused to allow Mudgett to return to work in any capacity. Mudgett notified Centegra that she was likely to suffer severe adverse reactions to the therapy because of her diabetes and irritable bowel syndrome. Several Centegra employees informed Mudgett repeatedly that she

2

would be terminated if she continued to refuse to take the prescribed drugs and treatments. Mudgett submitted to Centegra's demands and began taking the prescribed drugs on September 25, 2003.

The medication regime caused Mudgett to suffer various medical ailments, including a heart arrhythmia, severe bloody diarrhea, and colostridium difficile. Mudgett required surgery and was unable to work for several months due to her medical condition. In late October of 2003, Mudgett went on FMLA leave. Mudgett was released to return to work on December 1, 2003. Although she repeatedly attempted to return to work, Centegra denied her any and all positions.

On October 20, 2003, Mudgett contacted the Equal Employment Opportunity Commission ("EEOC") and filled out a questionnaire in which she alleged that Centegra had discriminated against her because of her disability and had retaliated against her for complaining of discrimination. On December 19, 2003, Mudgett filed a charge in which she alleged violations of the ADA based on allegations that she had been discriminated against based on a disability and retaliated against for complaining of discrimination. On March 11, 2004, Mudgett filed a second charge of discrimination alleging retaliation in the workplace for previous complaints of and resistance to discrimination. Mudgett subsequently filed a third charge of discrimination on April 26, 2004, alleging retaliation based on an unfavorable employment reference. On June 25, 2004, the EEOC issued a Notice of Right to Sue on behalf of Mudgett. Mudgett filed her initial complaint against Centegra on September 23, 2004.

## III. DISCUSSION

Based on the facts set out above, the Amended Complaint alleges three claims of discrimination under the ADA: (1) that Centegra discriminated against Mudgett because of her disabilities or perceived disabilities by unfairly subjecting her to medical testing, placing her on

unpaid suspension, banning her from working in obstetrics, denying her a reasonable accommodation and forcing her to undergo MRSA therapy upon threat of termination, denying her all other registered nurse or other positions for which she was qualified, and terminating her; (2) that Centegra retaliated against Mudgett by refusing to return her to work and terminating her; and (3) that Centegra acted with malice or reckless indifference to Mudgett's federally protected rights. Amended Complaint ¶ 30. In its motion to dismiss Centegra argues Mudgett failed to exhaust her administrative remedies with regard to her failure to accommodate claim because this claim was omitted from her EEOC charge. Centegra further argues that Mudgett's ADA claims should be dismissed because she alleged the existence of only one disability (*i.e.*, her MRSA) and omitted from her EEOC charge any mention of her diabetes and irritable bowel syndrome. *Id.*

The ADA adopts the same procedural prerequisites as Title VII. *See* 42 U.S.C. § 12117(a). These procedural prerequisites provide that (1) a plaintiff must file a timely charge with the EEOC and (2) receive a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(b), (e), and (f). After receipt of the right to sue letter, a plaintiff has 90 days to bring suit in federal court. 42 U.S.C. § 2000e-5(f)(1). These statutory requirements are deemed preconditions, similar to statutes of limitations and, if not satisfied, are grounds for dismissal unless waived by the defendant (which has not occurred here). *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982); *Gibson* v. *West*, 201 F.3d 990, 993 (7th Cir. 2000).

As described by the Seventh Circuit, "[t]he context in which we must operate was well stated by Judge Bauer in *Willis* v. *Chicago Extruded Metals Co.*, 375 F.Supp. 362, 365-366 (N.D.Ill.1974) (footnotes omitted)":

> (T)he Civil Rights Act is designed to protect those who are least able to protect themselves. Complainants to the EEOC are seldom lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected. . . .

*Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164 (1976), 167-68 (7th Cir.1976).[1]

Within this context, however, a plaintiff may not bring a claim that was not originally included in the EEOC charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994), *citing Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). Although it is widely known that a tiny proportion of charges are actually conciliated, the rule is designed to encourage the EEOC and the employer to settle the dispute through conference, conciliation, and persuasion without the need to resort to the courts. *See id.* (". . . Congress created the [EEOC] and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the EEOC, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit. . . ."). Additionally, it gives the employer some warning of the conduct about which the employee is aggrieved. *Cheek*, 31 F.3d at 500, *citing Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Claims not explicitly alleged in the EEOC charge may be brought, however, if they are "like or reasonably related" to one of the EEOC charges and can reasonably be expected to grow out of an EEOC investigation of the charges. *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003), *citing Jenkins*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*). To determine

---

[1] Although a Title VII case, the Seventh Circuit continues to rely on *Jenkins* in parallel discrimination cases. *E.g., Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (disability); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) (age).

5

whether the allegations in the complaint fall within the scope of the earlier EEOC charge, the court considers whether there is a factual relationship between them. *Kersting* v. *Wal-Mart Stores*, 250 F.3d 1109, 1118 (7th Cir. 2001). That is, "the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*" *Id.*, *quoting Cheek*, 31 F.3d at 500 (emphasis in original).

### A. Failure to Accommodate Claim

The ADA prohibits an employer from discriminating against a qualified individual with a disability in regard to hiring, terms and conditions of employment, and discharge. 42 U.S.C. §12112. The court of appeals has defined two distinct forms of discrimination: failure to accommodate and disparate treatment. *Sieberns* v. *Wal-Mart Stores, Inc.*, 125 F.3d 1019 (7th Cir. 1997). In short, treating an individual because of disability less favorably than those otherwise similarly situated is known as "disparate treatment" and is proved under the construct initially set out in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973). *Sieberns*, 125 F.3d at 1021-22. In addition, because the ADA, at 42 U.S.C. § 12112(b)(5)(a), also requires an employer who knows of a qualified individual's disability to make reasonable accommodation of the individual's limitations, 42 U.S.C. § 12112(b)(5)(a), a plaintiff may also state a claim for failure to reasonably accommodate. *See Sieberns*, 125 F.3d at 1022. In the second type of claim, a plaintiff is not required to demonstrate that another individual who was not a "qualified individual with a disability" was treated more favorably but merely to show that the employer failed to reasonably accommodate that individual.

Mudgett concedes that none of her EEOC charges specifically references the magic words, "failure to reasonably accommodate." Rather, Mudgett points to her December 19, 2003 charge as describing the factual basis underlying her failure to accommodate claim. In this charge, Mudgett

6

checked the boxes "retaliation" and "disability" and alleged the following:

> I was hired by the Respondent on April 1, 1997. I was employed as a Registered Nurse II, Obstetrics. Respondent is aware of my disability. On or about June 30, 2003, I was the only employee required by Respondent to undergo a medical test. I was laid off, with pay, from June 27, 2003 through July 15, 2003, pending an investigation by Respondent. On or about July 15, 2003 I raised a complaint of discrimination based on my disability. I was subsequently suspended without pay on July 18, 2003. On or about September 11, 2003, Respondent informed me that I must agree to take antibiotics and undergo a treatment protocol before I would be returned to work . . . . I became ill and required surgery, due to the antibiotics Respondent required me to take. I was unable to work because of this illness. Respondent has informed me that I will not be allowed to work in Obstetrics and that I must locate a position with Respondent outside of Obstetrics.
>
> I believe that I have been discriminated against on the basis of my disability and retaliation for complaining of discrimination against me, in violation of the Americans with Disabilities Act of 1990.

Def. Ex. A., December 19, 2003 EEOC Charge.[2] Mudgett contends the allegations of the complaint are consistent with the charge and certainly like or reasonably related to the charge.

Centegra relies on *Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999), for the statement that the court must dismiss where a failure to accommodate claim was not mentioned in the EEOC charge. Centegra's Memorandum at 5. In that case, the plaintiff had been terminated ostensibly for misconduct but she charged discrimination based on her disability. The opinion does not describe the charge beyond stating that the charge made no reference to facts alleged in plaintiff's complaint, denial of a suitable desk chair, appropriate dimmer lighting, or a handicapped parking

---

[2] Because Mudgett referred to her December 19, 2003 EEOC charge in her complaint, the court may consider this document without converting the motion to dismiss into a motion for summary judgment. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). "'[T]his is a narrow exception' to the general rule that when additional evidence is attached to a motion to dismiss, 'the court must either convert the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12.'" *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730 at 735 (7th Cir. 2002), *quoting Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

space. Neither does it expound on the general "like or related to" principle, mentioning only *Weigel* v. *Target Stores*, 122 F.3d. 461, 464 (7th Cir. 1997) (holding that where plaintiff had insisted in the district court that she rested on a disparate treatment claim, she had waived appellate review of her reasonable accommodation claim), and *Cheek,* addressed below. Thus, it is difficult to ascertain from *Green* the line at which the charge does not say enough to support a complaint.

Other cases on which Centegra relies are not controlling and lend little guidance because the circumstances were significantly different from those presented here. In *Jones* v. *Sumser Retirement Village*, 209 F.3d 851 (6th Cir. 2000), the charge challenged the plaintiff's termination on the basis that the employer was required to keep her job open until she recovered from her disability. The court of appeals reversed the district court's conclusion that a claim for failure to accommodate was related to the claim that she was terminated because of her disability. Most significantly, perhaps, the Ohio Human Rights Commission had investigated the termination claim and only after it had returned a finding of no cause did plaintiff bring a new charge to the Commission regarding reasonable accommodation. The Commission did not consider those facts because they were untimely and the plaintiff thereafter made no effort to file the new charge with the EEOC. Under these facts, the court essentially treated the claim waived. In *Marshall* v. *Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (also "*see* cited" in *Green,* 197 F3d. at 898), the court ruled that a plaintiff, whose charge spoke only of the employer's failure to allow her to apply for a particular job, was foreclosed from suing based on her termination or failure to accommodate her disability by transferring her to that same job. The court commented, however, that had the *termination* been properly before it, "it might well [have brought] in its train the question whether [the employer] had a duty to take action short of termination by accommodating [the plaintiff's]

8

disability-driven limitations in her former job. . . ." 130 F.3d at 1099.[3]  In contrast to *Jones*, *Marshall* seems to consider a termination claim consistent with a reasonable accommodation claim.

The Seventh Circuit in *Cheek* ruled that where the charge, filed before the plaintiff's termination, alleged that her sales manager had constantly intimidated plaintiff and had required her but not men to pay her clients' insurance premiums, plaintiff could not proceed on a complaint that she was transferred to a less lucrative position because of her sex or that the company had a pattern and practice of transferring women to unprofitable sales routes. The court reasoned that neither the type of conduct alleged to be discriminatory in the charge nor the identity of the individuals involved were related to the allegations of the complaint. 31 F.3d at 502.

Rather than parsing the various cases for factual similarities and differences, it is best to measure the facts here against the consistent Seventh Circuit direction to determine whether the charge and complaint talk about the same conduct and the same involved individuals. There is no question that the charge and the complaint point to the same individuals–at least Centegra is not arguing otherwise–and that the discriminatory conduct began when Centegra subjected Mudgett to the MRSA test, setting in motion her eventual termination. The language "I was the only employee required by Respondent to undergo a medical test" suggests a disparate treatment claim. The rest of the charge concerns Mudgett's efforts to hang on to her job. She contends that Centegra was punishing her for complaining and ostracizing her because of a disability. If she can prove that she made a request for accommodation, then she may be able to establish that Centegra's conduct was unlawful. As the author of an eminent treatise has stated, "The reasonable accommodation

---

[3] Centegra also cites several district court decisions. Because each is fact-specific, and inasmuch as they are not controlling, the court will not discuss them here other than to say none persuades this court that Centegra's position is sound.

9

requirement is at the heart of the ADA, for it is the principal vehicle by which the goal of removing barriers to equal employment opportunity for qualified disabled individuals can be attained." Larson, EMPLOYMENT DISCRIMINATION § 154.03 (2d ed.). Certainly there is nothing in the cited law that requires an individual to specifically state "reasonable accommodation" anymore than to specifically state "disparate treatment " (which is also not explicit in Mudgett's charges).[4] Had this claim actually been investigated, the EEOC would likely have considered whether a request for accommodation had been made and whether a conciliation might be possible on that basis because accommodation is the essence of the ADA's protections.[5]

---

[4]It is worth remembering that, although language from *Jenkins* has been lifted in a number of subsequent opinions, sometimes with the result of foreclosing a discrimination claim as not like or related to the charge, *Jenkins* actually sets down a very liberal standard for "like or reasonably related." There the plaintiff checked "race or color" but not "sex" on her charge form, and stated as follows:

> I feel that I am being discriminated in the terms and conditions of my employment because of my race, Negro. I have worked for Blue Cross and Blue Shield approx. 3 years during which time I (had) no problem until May 1970 when I got my natural hair style. Later when I came up for promotion it was denied because my supervisor, Al Frymier, said I could never represent Blue Cross with my Afro. He also accused me of being the leader of the girls on the floor. The pressures I was working under kept me upset, therefore, I asked for a leave of absence. I was told I had to take a vacation before I could be granted leave of absence. I was granted a week vacation and on my return I was asked to take a 90 day leave, quit, or be fired, time they said to get myself together; and at the end of this time they would be able to place me on another job. A White employee who associated with me might have been denied her promotion because of her association with me.

The court ruled that this charge supported multiple claims of race discrimination and of sex discrimination, the latter based on the language "being a leader of the girls" and the reference to the White employee denied promotion because of association with plaintiff. 530 F.2d at 139.

[5]Mudgett points out in her response brief that she specifically used the words "refusal of reasonable accommodation" in her EEOC questionnaire and argues that the questionnaire can be considered to show that her charge encompassed that claim, citing *Cheek*, 31 F.3d at 502 ("[I]n assessing the scope of the EEOC charge, we may consider her statements in a sworn affidavit that she filed in support of the charge."). In reply, Centegra relies on the opinion in *Novitsky v. American Consulting Engineers*, 196 F.3d 699 (7th Cir. 1999), to argue that Mudgett should have noticed that the EEOC charge did not pick up her questionnaire's allegations of failure to reasonably accommodate. In *Novitsky*, the plaintiff, who was represented by counsel at EEOC, claimed religious discrimination because she was not allowed to take Yom Kippur off, and the court ruled that the charging party should have noticed that fact was missing from the formal charge. The court cited *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir. 1991), as authority for its statement, "[I]t is the charge rather than the questionnaire that matters." There, however, the plaintiff (Gaynor) had only filled out a questionnaire but had not actually filed a charge. *Novitsky* predates *Cheek*
(continued...)

B.  **Claims Arising from Mudgett's Diabetes and Irritable Bowel Syndrome**

Centegra argues that the court should dismiss the Amended Complaint because it adds new claims of disparate treatment and retaliation based on Mudgett's diabetes and irritable bowel syndrome that were not included in any of her EEOC charges. Centegra bases its argument on its assumption that the "disability" mentioned in Mudgett's EEOC charges referred solely to her MRSA, although none of the charges mentioned MRSA. Mudgett responds, however, that her EEOC questionnaire and its attachments, correspondence to the EEOC from her attorney, correspondence to Centegra's President and CEO, and a joint status report filed with Magistrate Judge Levin establish that Mudgett provided sufficient notice that she was alleging claims related to her diabetes and irritable bowel syndrome, in addition to her MRSA.

The court need not consider these documents. In evaluating the scope of an EEOC charge, the court considers what EEOC investigation could reasonably be expected to grow from the original complaint, and whether the same conduct and same individuals are identified. Notably, Mudgett's December 2003 charge mentions that she was required to undergo a treatment protocol before she

---

[5](...continued)
and was not addressed in *Cheek*, which may indicate that its precedential importance is narrow. *See* Judge Rovner, concurring, 196 F.3d 699, 703 ("The majority opinion contains some broad language which purports to limit the complainant to the language of the charge . . . . Contrary to the opinion's implications, we do not now decide whether an illiterate person or *pro se* person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge."). If this document is considered, it is plain that Mudgett was attempting to make a reasonable accommodation claim, but the court does not consider it necessary to consider the document to have reached its conclusion.

In a related vein, the parties might consider whether evidence could be offered at trial on the hypothetical whether the EEOC would have investigated reasonable accommodation if it had investigated Mudgett's charge. The courts consistently treat exhaustion as a question of law but the wide range of judicial opinions suggests that the courts might be informed by the testimony of an actual EEOC witness with knowledge of the investigatory process.

11

would be allowed to return to work and that, as a result, she became ill and required surgery. Thus, it is fair to say that Mudgett's claims of discrimination and retaliation based on her diabetes and irritable bowel syndrome could have been developed from the EEOC's investigation of the charges before it, as she alleges that the treatment protocol aggravated her diabetes and irritable bowel syndrome, making her ill. At a minimum, the allegations associated with her diabetes and irritable bowel syndrome are intertwined with the allegations regarding her MRSA. The court, therefore, denies Centegra's motion to dismiss Mudgett's claims of discrimination and retaliation that are based on her diabetes and irritable bowel syndrome.[6]

## ORDER

For the reasons stated above, the court denies Centegra's motion to dismiss [#39]. Centegra has until July 18, 2006 to answer the complaint.

Enter: *[signature]*

JOAN HUMPHREY LEFKOW
United States District Judge

Date: June 27, 2006

---

[6] Centegra also argues that it will be prejudiced if its experts will not have an opportunity to consider Mudgett's "new" claims and the information made pertinent by them. This decision treats the sufficiency of the pleadings only. In any event, Centegra has had notice since December 7, 2005, well before its expert disclosure deadline, that Mudgett intended to press this claim.

12